```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
RATES TECHNOLOGY, INC.,

                Plaintiff,             MEMORANDUM & ORDER
                                       05-CV-2755(JS)(AKT)
        -against-

MEDIATRIX TELECOM, INC. and
MEDIA5 CORPORATION,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:     James B. Hicks, Esq.
                   Hicks Park Law, LLP
                   824 Wilshire Blvd., Suite 300
                   Los Angeles, CA 90071

                   David Lazer, Esq.
                   Jennifer Marie Kurtz, Esq.
                   Zachary Murdock, Esq.
                   Lazer, Aptheker, Rosella & Yedid, P.C.
                   225 Old Country Road
                   Melville, NY 11747

For Defendant:     Daniel Carl Miller, Esq.
                   Ethan Horwitz, Esq.
                   King & Spalding, LLP
                   1185 Avenue of the Americas
                   New York, NY 10036-4003
```

SEYBERT, District Judge:

In its January 5, 2010 Order (the "Sanctions Order"), the Court adopted in their entirety Magistrate Judge A. Kathleen Tomlinson's (1) Report and Recommendation, dated March 31, 2008 ("R&R") (Docket Entry 155), and (2) Supplemental Report and Recommendation dated September 2, 2009 ("Supplemental R&R") (Docket Entry 165) (collectively, the "R&Rs"). The R&Rs

recommend that the Court sanction, pursuant to Rule 37, Plaintiff Rates Technology, Inc. and Plaintiff's counsel, James B. Hicks, Esq. ("Hicks"), and dismiss Plaintiff's Amended Complaint in its entirety.  Mistakenly, because the underlying motion contained sensitive information and was sealed, the Sanctions Order was also filed under seal.  Defendants Mediatrix Telecom, Inc. and Media5 Corporation's (collectively, "Mediatrix") motion to unseal the Sanctions Order is GRANTED based on Defendants' representation that the Order contains no confidential information.  (See Docket Entry 179 at 1.)

Also pending before the Court are (1) Hicks' motion for reconsideration; (2) Defendants' accounting of the legal fees and expenses it incurred in connection with this litigation (the "Fee Application"); (3) Plaintiff's motion for leave to file a sur-reply concerning the Fee Application;  and (4) Hicks' motion to strike Defendants' reply brief regarding the Fee Application.

For the reasons that follow, Hicks' motion for reconsideration is granted only insofar as the Court acknowledges an incorrect reference to Federal Rule of Civil Procedure 11 in the Sanctions Order.  It is DENIED in all other respects.  Defendants are awarded $91,587.68 in reasonable legal

fees and expenses. Plaintiff's motion to file a sur-reply is DENIED AS MOOT, and Hicks' motion to strike Defendants' reply concerning the Fee Application is DENIED.

## DISCUSSION

The Court assumes familiarity with the facts and posture of this litigation, which are discussed at length in the R&Rs and the Orders cited therein.

## I. Plaintiff's Motion for Reconsideration

Hicks' motion to reconsider the January 2010 Order is granted insofar as it asks the Court to correct an erroneous reference to Federal Rule of Civil Procedure 11. As Hicks correctly points out, the Order awards fees pursuant to Federal Rule 37. Thus, the language on page five of the January 2010 Order that reads "Plaintiff's case should be dismissed as a Rule 11 sanction" was meant to refer instead to Rule 37. Hicks' reconsideration motion is DENIED in all other respects.

### A. Legal Standard

Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3. See Wilson v. Pessah, No. 05-CV-3143, 2007 U.S. Dist. LEXIS 17820, at *4 (E.D.N.Y. March 14, 2007). Rule 59(e) permits a moving party to file a motion for

reconsideration when it believes the Court overlooked important "matters or controlling decisions" that would have influenced the prior decision. Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999). Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion. See United States v. Gross, No. 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously."). Nor is it proper to raise new arguments and issues. See Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997). Reconsideration may only be granted when the Court did not evaluate decisions or data that might reasonably be expected to alter the conclusion reached by the Court. Wechsler v. Hunt Health Sys., 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002).

Rule 60(b) of the Federal Rules of Civil Procedure provides relief from a judgment for, inter alia, mistakes, inadvertence, excusable neglect, newly discovered evidence, and fraud. Fed. R. Civ. P. 60(b). Rule 60(b) provides "extraordinary judicial relief" that may "only be granted upon a showing of exceptional circumstances." Nemaizer v. Baker, 793

F.2d 58, 61 (2d Cir. 1986).

## B. The Remainder of Hicks' Reconsideration Motion is Denied

Hicks asserts three principal reasons why the Sanctions Order should be reconsidered: (1) Plaintiff and Hicks could not provide an interrogatory answer because it did not have the information sought; (2) there is no evidence that Hicks was personally responsible for the discovery violation; and (3) the Court improperly denied Hicks the opportunity for oral argument on its decision to adopt the R&Rs. Plaintiffs' arguments fail under either Rule 59(e) or 60(b).

Hicks' first argument is simply an attempt to re-litigate an issue that the Court considered at length in the Sanctions Order. See Sanctions Order at 13-15. Similarly, the Court also considered and rejected Hicks' second argument when it found that Plaintiff and Hicks were both responsible for the sanctionable conduct. See id. at 17. In his current motion, Hicks offers nothing to change the Court's initial conclusion. Further, the Court notes that Hicks had ample notice that Judge Tomlinson was contemplating sanctions (see Sanctions Order at 16), and he could have advised his client to comply with Judge Tomlinson's discovery orders, asked to withdraw from the representation, or counseled his client to drop the underlying

infringement lawsuit. In light of Hicks' stance that his client was unable to articulate an element-by-element analysis of the claimed infringement, perhaps this would have been the most appropriate course. Hicks' third argument is unpersuasive because by denying a litigant who filed written briefs the opportunity for oral argument, the Court does not per se deny him an opportunity to be heard. See Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999). Hicks' request for oral argument on his reconsideration motion is also denied.

II. Defendants' Fee Application

In its Sanctions Order, the Court directed Defendants to submit an accounting of the legal fees and expenses it incurred due to the sanctioned conduct (the "Fee Application"). Defendants seek $203,916.17. For the reasons that follow, the Court awards defendants $91,587.68. In accordance with Judge Tomlinson's Supplemental R&R, which the Court adopted in its Sanctions Order, Plaintiff and Hicks are each to bear 50% of the award. (See Supplemental R&R at 18-19.)

A. Calculating Reasonable Legal Fees and Costs

The Second Circuit calculates attorneys' fees by a "presumptively reasonable fee" test. See Arbor Hill Concerned

6

Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008). Under this method, the "presumptively reasonable fee" is the product of: (1) the hours reasonably expended at (2) a reasonably hourly rate. Arbor Hill, 522 F.3d at 183. A reasonable hourly rate is determined by considering "all of the case specific variables that we and other courts have identified as relevant to the reasonableness of attorneys' fees . . . ." Id. at 190 (emphasis in original). Essentially, the inquiry is "what a reasonable, paying client would be willing to pay," keeping in mind that a party usually seeks "to spend the minimum necessary to litigate the case effectively." Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quoting Arbor Hill, 522 F.3d at 190).

Courts will also consider (1) the complexity and difficulty involved in the case, (2) the available expertise and capacity of the client's other counsel (if any), (3) the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), (4) the timing demands of the case, (5) whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and (6) other

returns (such as reputation, etc.) that an attorney might expect from the representation.[1] Id. at 184. Perhaps the most important factor in the reasonableness inquiry is the nature of the litigation. See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., No. 07-CV-3208, 2010 WL 3925195, at *3 (E.D.N.Y. Sept. 9, 2010) (awarding attorneys' fees where attorneys submitted proof that their fees were in line with other intellectual property firms).

B. The Defendants' Legal Fees

1. A Reasonable Hourly Rate

Counsel's hourly rates are higher than what are typically awarded in the Eastern District. Generally, in determining whether an hourly rate is reasonable, courts compare the attorneys' usual billing rates with the prevailing market rates in the applicable district. See Brady v. Wal-Mart Stores,

---

[1] These considerations are quite similar to the Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–719.

Inc., No. 03-CV-3843, 2010 WL 4392566, at *2 (E.D.N.Y. Oct. 29, 2010). Indeed, there is a presumption that the prevailing rates in the Eastern District supply the benchmark against which the Fee Application should be measured. Simmons v. New York City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009). That presumption may be overcome, however, but only where the fee applicant makes a particularized showing that out-of-district rates should apply. Realsongs, Universal Music Corp. v. 3A North Park Ave. Rest Corp., __ F. Supp. 2d __, 2010 WL 4320404, at *7 (E.D.N.Y. Oct. 26, 2010). "In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors." Simmons, 575 F.3d at 175. Defendants chiefly contend that the complexity of this case warrants an exception to the forum rule. (See Docket Entry 195 at 1.) This in itself does not justify departing from the prevailing Eastern District rates. In particular, there is no evidence that an Eastern District firm would have produced an inferior result. See Realsongs, 2010 WL

4320404, at *7. The Court thus evaluates the reasonableness of counsel's rates using Eastern District prevailing rates as a basis of comparison, remaining mindful that intellectual property cases generally justify higher-than-average hourly rates.[2] See id. To the extent that the Court departs upward from the rates awarded in recent intellectual property cases in this District, the discrepancy is partly due to the Court's recognition that patent law can often be more complex than copyright law, requiring advanced technical expertise.

The Court analyzes each attorney in turn. Partner Ethan Horwitz, Esq. seeks attorneys' fees at rates of $675, $700, $740 and $760 per hour at various points during the relevant period. In light of Simmons, the Court must instead award a rate equal to, "or slightly above, the recent rates approved in this district." Realsongs, 2010 WL 4320404, at *9. The Court finds that an appropriate hourly rate for Mr. Horwitz is $475. See id. (awarding $425 to a partner in an intellectual property case).

Senior associate Anastasia Fernands, Esq., billed at hourly rates of $485 and $520 at various points during this

---

[2] Plaintiff seeks leave to file a sur-reply addressing Defendants' argument that the Court should look at the prevailing rates outside the Eastern District. Inasmuch as the Court rejects Defendants' argument, Plaintiff's request (Docket Entry 194) is DENIED AS MOOT.

litigation. These rates, too, are higher than the prevailing Eastern District rates. See Entral Group Int'l, 2007 WL 2891419, at *10 (finding $340-360 reasonable for an associate); Entral Group Intern, LLC, 2006 WL 3694584, at *10 (awarding $365 an hour for an associate). The Court finds that an appropriate hourly rate for Ms. Fernands is $350. Realsongs, 2010 WL 4320404, at *9.

Four mid-level associates billed at the following hourly rates: Joseph Crystal, Esq., at $395, Bradley Micsky, Esq., at $280 and $350, Brent Bellows, Esq., at $450, and Daniel C. Miller at, Esq., $455 and $505. The Court finds that $225 per hour is a reasonable rate for these attorneys, who are described in the Fee Application as mid-level associates and for whom no professional background is given. (See generally Horowitz Declaration, Docket Entry 187.)

Three junior associates billed at the following hourly rates: Jordan Weiss, Esq., at $300; Marva R. Deskins, Esq., at $270; and Anu Gokhale, Esq., at $330. A reasonable hourly rate for these associates is $175. Realsongs, 2010 WL 4320404, at *10.

The paralegal staff billed at hourly rates ranging from $150 to $255. A reasonable hourly rate for these employees

is $150. See id.

  2. Hours Reasonably Expended

Having established the reasonable hourly rates, the next step is to evaluate the quantity and nature of the time spent on this case. Parties seeking attorneys' fees bear the burden of demonstrating the reasonableness of both the hours expended and the type of work performed. They typically do this through contemporaneous time records, preferably those specifying the nature of the work performed, the hours spent, and the dates on which the work was done. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147–48 (2d Cir. 1983). The level of detail need not be overly exhaustive, however. See Aiello v. Town of Brookhaven, No. 94-CV-2622, 2005 WL 1397202, at *2 (E.D.N.Y. June 13, 2005). "District courts have broad discretion to determine the reasonableness of hours claimed based on their general experience and 'familiarity with the case.'" Brady, 2010 WL 4392566, at *6 (quoting Murray v. Mills, 354 F. Supp. 2d 231, 238 (E.D.N.Y. 2005)). In determining whether an award is reasonable, the District court must review and eliminate hours that are found to be "excessive, redundant, or otherwise unnecessary." Hensley v. Eckhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

Plaintiff and Hicks principally argue that the Fee Application is deficient because it does not clearly indicate whether the fees claimed were incurred as a result of the sanctionable conduct. The Court largely rejects this argument because it agrees with Defendants that the discovery abuses were the driving force behind the protracted nature of this litigation. (See generally Docket Entry 191 at 8-11.) More specifically, the sanction in this case relates beyond fees and costs incurred in drafting the Rule 37 motion itself and instead encompasses all of the fees and expenses that grew out of Plaintiff's and Hicks' refusal to obey Judge Tomlinson's discovery orders.

To the extent that Plaintiff and Hicks argue, however, that the Fee Application is unclear because counsel's time entries are vague and repetitive, they make a valid point. The time records in this case are replete with entries such as "work on motions" (Fee App. Ex. A at 2), "work on filings," (id. at 3), and "work on status" (id. at 4). To give one expensive example, Mr. Horowitz once billed 6.6 hours in a single day for time spent "Work[ing] on filings." (Id. at 3.) These entries, and others like them, are unacceptably vague. See Levy v. Powell, 2005 WL 1719972, at *7 (E.D.N.Y. 2005). See Pyatt v.

Jean, 2010 WL 3322501, at *__ (E.D.N.Y. Aug. 17, 2010) (reducing award by lump sum for vague time entries and block billing).

The time records also suffer from "block billing," as "the practice of aggregating multiple tasks into one billing entry" is known. L.V. v. New York City Dept. of Educ., 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010) (quotations omitted). Examples of this practice can be found on just about every page of counsel's time records. Although not prohibited, block billing makes it "exceedingly difficult for courts to assess the reasonableness of the hours billed." Id. (quotations omitted). As with vague time entries, "courts have found it appropriate to cut hours across the board by some percentage." Id.; see also Stair v. Calhoun, 722 F. Supp. 2d 258, 271 (E.D.N.Y. 2010) (percentage deduction appropriate to remedy block billing).

Accordingly, the Court finds that a 25% percent reduction in counsel's legal fees is appropriate "as a practical means of trimming fat from a fee application." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d. Cir. 1998). Before the Court cuts this percentage off counsel's fees, it strikes in their entirety two block entries that Defendants concede include time spent on issues not related to the discovery sanction (paralegal Carol Splaine's October 10, 2007 and April 1, 2008

14

entries). (See Docket Entry 193 at 9.)[3]

Additionally, the Court strikes $15,570.00 in fees the Defendants' purportedly incurred in drafting the Fee Application. The Defendants have not supported this figure with contemporaneous time records, and the Court therefore has no way to evaluate its reasonableness. See Maher v. Alliance Mortgage Banking Corp., No. 06-CV-5073, 2010 WL 3516153, at *4 (E.D.N.Y. Aug. 9, 2010) (report and recommendation) ("To aid the court in determining the amount of reasonable attorney's fees, a [fee applicant] must offer evidence that provides a factual basis for the award. The Second Circuit has held that this evidence must be in the form of contemporaneous time records which specify for each attorney the date, number of hours worked and nature of the work done.") (citations omitted). Although Defendants indicate that these records would be supplied on request, (see Fee Application 26), the Court already requested these records,

---

[3] The parties dispute whether a small portion of counsel's hours reflects travel time that should be compensated at a lower hourly rate. Assuming arguendo that these disputed entries do reflect travel time, the Court nevertheless declines to reduce counsel's fees further. This is both a consequence of the lump sum deduction the Court has already taken from Defendants' fee award, and the steep mark downs that the Court has made to counsel's hourly rates. A 50% reduction in travel time may be customary, but it is not a bright-line rule. See Connor v. Ulrich, 153 F. Supp. 2d 199, 203 (E.D.N.Y. 2001) (noting that a court has discretion to compensate travel time at attorney's full hourly rate).

albeit tacitly, when it directed Defendants to submit its Fee Application. The Court is not in the practice of making individual requests for documentation that should have been provided months ago.

### 3. Calculating the Fee Award

Based on the foregoing discussion, the Court calculates the Defendants' fee award as follows: (the number of hours listed for each attorney in the Fee Application multiplied by that attorney's awarded hourly rate) less the 25% lump-sum reduction. The fees incurred in connection with the Fee Application, which were not listed in the Fee Application's hours tally and are not included in the formula, are stricken.

This formula works out as follows:

| | | | |
|---|---|---|---|
| Mr. Horowitz | 115.9 hours @ $475 | = | $55,052.50 |
| Ms. Ferndands | 49.3 hours @ $350 | = | 17,255.00 |
| Mr. Crystal | 14.2 hours @ $225 | = | 3,195.00 |
| Mr. Miscky | 15.2 hours @ $225 | = | 3,420.00 |
| Mr. Bellows | 22.1 hours @ $225 | = | 4,972.50 |
| Mr. Miller | 97.9 hours @ $225 | = | 22,027.50 |
| Mr. Weiss | 4.3 hours @ $175 | = | 752.50 |
| Ms. Deskins | 9.1 hours @ $175 | = | 1,592.50 |
| Ms. Gokhale | 3.2 hours @ $175 | = | 560.00 |

<u>Paralegals</u>:

| | | | |
|---|---|---|---:|
| Alexis Fernandez | 0.4 hours @ $150 | = | 60.00 |
| Nicholas Casolaro | 0.5 hours @ $150 | = | 75.00 |
| John McCullough | 3.2 hours @ $150 | = | 480.00 |
| Carol Splaine | 13.8 hours @ $150 | = | $ 2,070.00 |
| | **TOTAL:** | | **$111,512.50** |

As discussed earlier, Ms. Splaine's hours from October 10, 2007 and April 1, 2008 are not included in this calculation. These sums total $111,512.50. After a 25% reduction, Defendants are entitled to $83,634.38 in legal fees.

C. <u>Costs</u>

Defendants seek $3,675.17 in costs and disbursements. The Court strikes $343.74 of that figure, representing costs associated with a January 17, 2007 invoice, because no such invoice was provided in the Fee Application. The Court has reviewed the remaining disbursements, the bulk of which are for legal research, and finds them reasonable. Accordingly, Defendants are entitled to $3,331.43 in costs.

The Court has considered and rejected Plaintiff's and Hicks' remaining arguments concerning the Fee Application, including Hicks' evidentiary objections to the law firm invoices. Hicks' motion to strike Defendants' reply (Docket

Entry 201) is DENIED because Hicks has not demonstrated that such drastic relief is warranted. Defendants are entitled to an award of $86,965.81 in legal fees and costs.

## CONCLUSION

For the foregoing reasons, Defendants' motion (Docket Entry 179) to unseal the January 2010 Order is GRANTED. Plaintiff's motion for leave to file a sur-reply (Docket Entry 194) is DENIED AS MOOT. Hicks' motion for reconsideration (Docket Entry 177) is granted to the extent that the Court acknowledges an incorrect reference to Rule 11 in the Sanctions Order and is DENIED in all other respects. Hicks' motion to strike Defendants' reply (Docket Entry 201) is DENIED.

The Clerk of the Court is directed to unseal the January 2010 Order, to enter Judgment for Defendants and against Plaintiff and Hicks in the amount of $86,965.81. Pursuant to Judge Tomlinson's Supplemental R&R, which this Court adopted by its Sanctions Order, Plaintiff and Hicks are each responsible for 50% of the judgment. The Clerk of the Court is further directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March  31 , 2011
       Central Islip, New York